A96A1399. GAMBLE v. THE STATE.
(478 SE2d 455)

POPE, Presiding Judge.
Defendant Melvin Eugene Gamble was convicted by a jury of trafficking in cocaine. On appeal, defendant contends that the evidence was insufficient to support his conviction and that he was entitled to a directed verdict. He also contends the trial court erred in failing to grant defendant's motion to suppress evidence. Finding no merit to any of these contentions, we affirm.

Construed to support the verdict, the evidence shows that defendant drove himself and three co-defendants (Ferguson, Wright and Jackson) from Miami, Florida to Waycross, Georgia in a Ford Mustang. In Waycross, defendant took a rented Pontiac Gran Prix under false pretenses from Tonga Brown, whom he had met several weeks earlier. Instead of going to a local store, as he had told Brown,

defendant drove the Gran Prix back to Miami, accompanied by a fourth co-defendant (Kay). It is undisputed that defendant financed the return trip to Miami, and there is no evidence that any drugs were in the car when it was taken from Brown. The remaining three co-defendants also returned to Miami in the Mustang several hours after defendant.

After spending a few days in Miami with his co-defendants, defendant brought the Gran Prix to co-defendant Jackson and asked him to drive the car back to Waycross. Jackson agreed, and, accompanied by Kay, left for Waycross in the Gran Prix following defendant, who was driving the Mustang and carrying the remaining co-defendants. During this return trip, defendant paid for the Gran Prix's gas, and it is undisputed that at all times defendant exercised control over the Gran Prix.

On their way to Waycross, defendant and Jackson ran into a police roadblock. Defendant was unable to immediately produce proof of insurance and was asked to pull to the side of the road. Defendant and his companions in the Mustang appeared nervous when they saw that the Gran Prix also had been stopped, and, upon brief questioning, they gave differing accounts concerning their destination. Based on this, the police asked if they could search the Mustang. It is undisputed that defendant and his passengers voluntarily consented to the search, during which nothing was found. They also consented to having their pictures taken before continuing on their way to Waycross.

Jackson was also asked to pull the Gran Prix, which police realized was a rental car, to the side of the road. At first, Jackson was unable to produce the rental agreement for the car. Although he eventually located the agreement, it did not list him or Kay as authorized drivers. The agreement also specifically directed police to treat the car as stolen and to impound it if it was determined that the car was being driven by an unauthorized driver. Based on this, police asked Jackson and Kay to step out of the Gran Prix. Subsequently, police drug dogs on the scene scented around the car. One of the dogs alerted at the driver's side door. Police opened the door and the dog located a box containing 85.8 grams of 90 percent pure cocaine on the floor behind the driver's seat. Police also located a document in the car that contained defendant's name. They then arrested Jackson and Kay. Several days later, police in Miami arrested defendant.

1. Defendant contends that the above evidence was insufficient to warrant his conviction for trafficking in cocaine because it does not demonstrate that he was in possession of the cocaine. We disagree. OCGA § 16-13-31 (a) (1) specifically authorizes conviction for trafficking in cocaine upon a showing of either actual or constructive possession. *Williams v. State*, 199 Ga. App. 566, 570 (4) (405 SE2d 716)

(1991). In this case, even though defendant did not have actual physical control over the Gran Prix at the time it was stopped, a rational jury could have concluded beyond a reasonable doubt that defendant at least was in constructive possession of the contraband found in the Gran Prix based on the circumstances surrounding defendant's acquisition of that car; defendant's nervousness upon seeing that the Gran Prix had been stopped; the fact that defendant occupied the car immediately before turning it over to Jackson; and the evidence demonstrating that defendant exercised dominion and control over the Gran Prix during the trip to and from Miami.

Contrary to defendant's assertion, the fact that Jackson and Kay also had access to the Gran Prix on the date in question does not dictate a different conclusion. The record shows that defendant and all of his co-defendants each were charged with joint constructive possession of the cocaine. "[T]he equal access doctrine does not apply to those charged with being in joint constructive possession of contraband." *Fain v. State*, 211 Ga. App. 399, 401 (1) (439 SE2d 64) (1993).

Although defendant claimed he had no knowledge of the existence of the cocaine, under the facts of this case, the jury could have rejected defendant's claim and concluded that he was guilty of the crime for which he was convicted under the standard set forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Consequently, there is no merit to defendant's contention that he was entitled to a directed verdict of acquittal. *Hunt v. State*, 222 Ga. App. 66, 68 (1) (473 SE2d 157) (1996).

2. There also is no merit in defendant's contention that the trial court erred in failing to suppress all the evidence obtained at the roadblock because the roadblock was illegal. Clearly the roadblock was not illegal. See *State v. Golden*, 171 Ga. App. 27, 29-30 (2) (318 SE2d 693) (1984); *Evans v. State*, 190 Ga. App. 856 (380 SE2d 332) (1989). It was authorized by supervisory personnel, including the local sheriff, and was set up for the primary purpose of checking licenses, insurance and registration. The roadblock was also manned by qualified personnel and was identified as a police checkpoint by signs and the presence of marked police cars and uniformed officers. Passing motorists were detained only briefly unless, like defendant and Jackson, they were unable to produce the requisite information. And while it is true that officers allowed some cars to pass through the roadblock, the record shows that they only did so when conditions on the road backed up and created a potential safety hazard. The officers' conduct was justified and did not convert the roadblock into a mere random stop. *O'Kelley v. State*, 210 Ga. App. 686 (1) (436 SE2d 760) (1993).

3. Finally, we reject defendant's contention that the trial court erred in failing to suppress statements obtained from defendant and

the occupants of the Mustang regarding their intended destination and the picture police took of defendant. Defendant bases this contention on the assertion that such evidence was obtained during an illegal detention even if the roadblock itself was not illegal. Defendant and his cohorts in the Mustang, however, were never illegally detained. They initially were asked to pull over for a legitimate reason — the fact that defendant could not find his proof of insurance. Once pulled over, police were authorized to make a brief inquiry regarding defendant and his passengers' destination, especially in light of the fact that all the occupants of the Mustang appeared nervous. Having effected a valid stop, the police were also authorized to request consent to both search the Mustang and take defendant's picture, see *Kan v. State*, 199 Ga. App. 170, 171 (1), (2) (404 SE2d 281) (1991), and it is undisputed that they were voluntarily given such consent. Although the voluntary search and picture taking may have prolonged the detention, it did not make it illegal.

Additionally, we note that no harmful error could have resulted from the search of the Mustang or the taking of defendant's picture under the facts of this case. The search of the Mustang turned up no evidence against defendant, and introduction of the picture taken by police of defendant merely demonstrated defendant's presence at the roadblock on the date in question which was testified to by numerous witnesses at trial, including defendant.

*Judgment affirmed. Andrews and Smith, JJ., concur.*

DECIDED NOVEMBER 22, 1996.

*James K. Brooks*, for appellant.
*Richard E. Currie, District Attorney, Alexander J. Markowich, Assistant District Attorney*, for appellee.

