A98A0087. WHITE v. THE STATE.
(503 SE2d 891)

Pope, Presiding Judge.

A jury convicted defendant William White of driving under the influence of alcohol to the extent that he was a less safe driver. OCGA § 40-6-391 (a) (1). He appeals, and we affirm.

A review of the evidence in the light most favorable to the verdict shows that on November 22, 1996, defendant was stopped at a police roadblock in Atlanta, Georgia, and asked by Officer Cox to produce his driver's license. At that time, Cox noticed that defendant had glassy, bloodshot eyes, and Cox smelled alcohol on defendant's breath and person. Cox asked defendant if he had been drinking, and defendant replied that he had had four or five glasses of wine. Cox next asked defendant to pull to the side of the road and step out of his car. When defendant complied, Cox observed that defendant was unsteady on his feet. Thereafter, Cox asked defendant to recite the alphabet. In two attempts, defendant was unable to properly do so, skipping several letters. Defendant also tested positive on an alcosensor device and showed six out of six clues on the horizontal gaze nystagmus test.

Based on his observations of defendant before and during the above field tests, as well as his experience in making approximately 600 prior DUI arrests, Cox concluded that defendant was intoxicated to the extent he was a less safe driver. Consequently, Cox arrested defendant. Another officer who observed defendant at the scene also testified at trial that defendant was intoxicated. Following defendant's arrest, Cox read defendant his implied consent rights and requested that defendant take a blood test. Defendant, however, refused to take any test. Defendant also was belligerent throughout much of his encounter with police.

1. The above evidence was amply sufficient to allow any rational jury to have concluded that defendant was guilty of the crime for which he was convicted in accordance with the standard set forth in Jackson v. Virginia, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Prior to trial, defendant filed a motion to suppress all evidence

obtained against him after he was detained at the roadblock on the ground that the roadblock was unconstitutional. He argues that the trial court's denial of his motion to suppress constitutes reversible error.

The record evidence presented at trial and during the hearing on defendant's motion to suppress demonstrates that the roadblock at issue had been set up by supervisory personnel of the Atlanta DUI Countermeasures Team, who were present at the scene. The purpose of the roadblock was to check for driver's licenses and for intoxicated drivers. Implementation of the roadblock was carried out pursuant to specific, prearranged procedures that required all cars in the northbound lane of Peachtree Road to stop unless safety considerations dictated otherwise. There is, however, no evidence in this case that any northbound traffic was allowed to pass for any reason without first stopping at the roadblock. It also appears that any delay to passing motorists caused by the roadblock was minimal, absent reasonable suspicion of a violation of law on the part of a particular motorist. Additionally, the roadblock was demarcated by the blue lights of police vehicles and by at least four officers, including Cox, standing in the middle of the roadway, wearing reflective vests and using flashlights to motion oncoming traffic to stop. It also is evident that Cox was amply trained to make an initial determination of intoxication upon stopping defendant or any other motorist at the roadblock.

In light of the above, we conclude that the roadblock was legitimate, and that defendant's detention at it did not constitute an arbitrary, random stop or an unreasonable seizure. See *Michigan Dept. of State Police v. Sitz*, 496 U. S. 444, 450 (110 SC 2481, 110 LE2d 412) (1990); *LaFontaine v. State*, 269 Ga. 251, 252-253 (3) (497 SE2d 367) (1998); *Heimlich v. State*, 231 Ga. App. 662, 663-664 (500 SE2d 388) (1998). Absent an unreasonable seizure, there was no violation of defendant's rights under the Fourth Amendment to the United States Constitution. Id. Nor was there any violation of defendant's rights under Art. I, Sec. I, Par. XIII of the Georgia Constitution, which, like the Fourth Amendment, prohibits only unreasonable seizures. Consequently, the trial court did not err in denying defendant's motion to suppress.

3. Defendant contends the trial court committed reversible error by stating to the jury in its final charge that "the State is not required to prove the guilt of the accused beyond a reasonable doubt, all doubt or to a mathematical certainty." Clearly this instruction contains a verbal inaccuracy, making it erroneous. *Postell v. State*, 200 Ga. App. 208, 210 (2) (407 SE2d 412) (1991) (rev'd on other grounds); *Chamberlain v. State*, 216 Ga. App. 207, 208 (2) (453 SE2d 793) (1995). The trial court should have stated that "the [S]tate is not required to prove the guilt of the accused beyond all *reasonable* doubt

or to a mathematical certainty." (Citation and punctuation omitted.) Id. In this State, however, it is well settled that a mere verbal inaccuracy, resulting from a palpable "slip of the tongue," does not constitute reversible error if it clearly could not have misled or confused the jury. *Gober v. State*, 247 Ga. 652, 655 (3) (278 SE2d 386) (1981); *Postell*, 200 Ga. App. at 210 (2).

With the above in mind, we note that it is undisputed and apparent in this case that the erroneous instruction was the result of a "slip of the tongue." Therefore, we need only determine whether it, when considered in light of the whole charge, may have misled or confused the jury in this case regarding the burden of proof required to convict defendant. *Whitt v. State*, 257 Ga. 8, 9 (3) (354 SE2d 116) (1987); *Hambrick v. State*, 256 Ga. 688, 690 (3) (353 SE2d 177) (1987); *Postell*, 200 Ga. App. at 210 (2). In addressing this issue, we note that prior to the erroneous instruction, the trial court correctly instructed the jury regarding the State's general burden of proof and the fact that each element of the crime must be proven beyond a reasonable doubt. Additionally, before the erroneous instruction was given, it is apparent in this case, unlike *Chamberlain*, that the trial court specifically informed the jury that it was incumbent upon the State to prove every essential element of the crime beyond a reasonable doubt. Following the erroneous instruction, the trial court properly defined reasonable doubt and told the jury that it had a duty to acquit defendant if the State failed to prove his guilt beyond a reasonable doubt. On two other occasions the trial court further instructed the jury that it must acquit defendant if it did not believe he was guilty beyond a reasonable doubt.

Under such circumstances, "[v]iewing the charge as a whole, we find, beyond a reasonable doubt, that the erroneous [instruction] did not mislead or confuse the jury on the burden of proof, or in any way contribute to the verdict. [Therefore, t]he error [caused by the trial court's slip of the tongue] was harmless[, and as such, does not warrant reversal]." *Postell*, 200 Ga. App. at 210 (2); see *Whitt*, 257 Ga. at 9 (3); *Moak v. State*, 222 Ga. App. 36, 41-43 (473 SE2d 576) (1996) (Birdsong, P. J., concurring specially, and joined by a majority of the Court).

4. Defendant contends that the trial court erred in refusing to give the jury his third and fourth written requests to charge. In those requests, defendant asked that the jury be instructed that while Georgia's Implied Consent Law included a requirement that a person arrested for DUI in this State submit to a chemical test or tests of his or her blood, breath, urine or other bodily substances when properly requested to do so by a police officer, that person had the right to refuse to take any such test or tests, and the exercise of that right, in and of itself, was not determinative of whether or not the person was

under the influence of alcohol.

Clearly the above requests contained relevant and accurate statements of the law. See *State v. Leviner*, 213 Ga. App. 99, 100 (2) (443 SE2d 688) (1994) (acknowledging that DUI suspects have the right to refuse to take a requested State-administered chemical test subject to the legislative mandate that evidence of the exercise of that right shall be admissible in the suspect's criminal trial); *Brinson v. State*, 232 Ga. App. 706 (503 SE2d 599) (1998) (holding that a suspect's refusal to take a State requested chemical test, by itself, is insufficient to warrant a determination that the suspect was driving under the influence to the extent he or she was less safe). The trial court's failure to give the requests as written, however, does not constitute error. This is so because the record demonstrates that in its final charge, the trial court instructed the jury in accordance with a written request provided by the State, which made it implicitly clear that defendant could refuse to take a State-administered blood test after being requested to do so by police. Additionally, the trial court properly instructed the jury that defendant's failure to take the State-administered blood test could be used against him and that it created a rebuttable inference that the test would have shown that he had had something to drink, but that the mere fact that someone had been drinking, without more, was not sufficient to convict that person of driving under the influence of alcohol. Thus, the final charge relayed the same principles to the jury that were set forth in defendant's third and fourth requests to charge. A trial court does not err in failing to give an appropriate request to charge, as written, when its charge as a whole contains the same principles of law set forth in the request. *White v. State*, 230 Ga. 327, 338-339 (7) (196 SE2d 849) (1973).

*Judgment affirmed. Beasley and Ruffin, JJ., concur.*

DECIDED JULY 6, 1998 —

*Head, Mullis, Thomas & Webb, Thomas J. Thomas*, for appellant.
*June D. Green, Solicitor, James M. Miller, Assistant Solicitor*, for appellee.